IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| RANI ALLAN, | ) | |
| | ) | Case No. 1:23-cv-867 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| DANIEL NATHAN GIGI, | ) | |
| SHLOMO GIGI, | ) | |
| ARLINGTON COUNTY, | ) | |
| CARLY WHISNER, and | ) | |
| R. STANLEY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Rani Allan ("Mr. Allan"), for his complaint against Defendants Daniel Nathan Gigi, Shlomo Gigi, Arlington County, Carly Whisner, and R. Stanley, alleges the following:

1.      Residents and community members have long-raised concerns over Arlington County Police Department's ("ACPD") persistent problem with officers engaging in improper and/or racist conduct towards civilians of color, including effecting unlawful arrests.

2.      Arab-Americans frequently encounter racial profiling in their daily lives or while asserting their legal rights, making them one of the most targeted populations.

3.      Mr. Allan is an Arab-American attorney who was unlawfully arrested by two ACPD officers for defending himself—in his own residence—after being physically assaulted by Defendant Daniel Gigi. Following Mr. Allan's arrest, he spent two nights in jail, was charged with a misdemeanor and a felony, and was forced to submit to a psychiatric evaluation. The ACPD took no action against Defendant Daniel Gigi—a White male—despite the two 9-1-1 calls made by Mr. Allan during the day of the incident.

4.      Mr. Allan brings this action to seek redress for the harm suffered in connection with the unlawful actions taken by Defendants that resulted in his wrongful eviction, arrest, and detention.

5.      Mr. Allan's claims arise under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, Section 1988 of the Civil Rights Act of 1871, 42 U.S.C. § 1988, and the laws of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under 18 U.S.C. §§ 1331 and 1343 because this case involves questions of federal law and because Mr. Allan seeks damages for violations of his civil rights and constitutional rights violations.

7.      This Court has supplemental jurisdiction over the state law claims under 18 U.S.C. § 1367(a) because the claims form part of the same case or controversy under Article III of the United States Constitution. The state law claims share all common operative facts with Mr. Allan's federal law claims, and the parties are identical. Resolving Mr. Allan's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

8.      Venue is proper in this Court under 18 U.S.C. § 1391(b) because the Defendants reside within Virginia, and a substantial part of the events giving rise to Mr. Allan's claims herein occurred within this judicial district.

## THE PARTIES

9.      Plaintiff Rani Allan ("Mr. Allan") is an Arab-American attorney who formerly resided at 1121 Arlington Boulevard, Apartment #436, Arlington, VA 22209 ("the Apartment"). Mr. Allan currently resides in Washington, D.C.

10.     Defendant Daniel Nathan Gigi ("Defendant Daniel Gigi") is a White male and the son of Defendant Shlomo Gigi. Defendant Daniel Gigi served as Defendant Shlomo Gigi's agent in the lease arrangement with Mr. Allan. Defendant Daniel Gigi is named as a party to Counts IV, V, and VI of the Complaint. Upon information and belief, Defendant Daniel Gigi resides in Prince William County, Virginia.

11.     Defendant Shlomo Gigi is a White male and the father of Defendant Daniel Gigi. Defendant Shlomo Gigi served as Mr. Allan's landlord and Defendant Daniel Gigi's principal. Defendant Shlomo Gigi is named as a party to Counts VI, VII, and VIII of the Complaint. Upon information and belief, Defendant Shlomo Gigi resides in Prince William County, Virginia.

12.     Defendant Arlington County is a municipal corporation duly organized and existing under the laws of the Commonwealth of Virginia. It is authorized under the laws of the Commonwealth to maintain a police department, the ACPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant Arlington County is the proper party in suits brought against the ACPD, and it is named as a party to Count II of the Complaint. Upon information and belief, the law enforcement activities of the ACPD are funded, in part, by funds from the federal government.

13.     Defendant Carly Whisner is a White female who is or was employed by the ACPD as a police officer, with badge number 1772. Defendant Carly Whisner is named in her individual capacity to Counts I, III, and IV of the Complaint. Upon information and belief, Defendant Carly Whisner resides within Arlington County, Virginia.

14.     Defendant R. Stanley is a White male who is or was employed by the ACPD as a police officer, with badge number 1803. Defendant R. Stanley is named in his individual

capacity to Counts I, III, and IV of the Complaint. Upon information and belief, Defendant R. Stanley resides within Arlington County, Virginia.

## BACKGROUND FACTS

15. On August 30, 2021, Mr. Allan and Defendant Shlomo Gigi entered into a residential lease agreement, whereby Mr. Allan agreed to rent the Apartment from Defendant Shlomo Gigi for $1,400 per month. The original term of the lease began on August 31, 2022 and ended on May 31, 2022. Attached as Exhibit 1 is a true and correct copy of the lease.

16. In accordance with the lease, Mr. Allan paid a security deposit of $1,400 to Defendant Shlomo Gigi. Mr. Allan timely remitted all rental payments owed under the lease.

17. On March 28, 2022, Defendant Shlomo Gigi and Mr. Allan agreed to extend the term of the lease to an unspecified date.

18. On May 30, 2022, Defendant Shlomo Gigi called Mr. Allan and demanded that he vacate the premises by the end of the following day. Mr. Allan informed Shlomo Gigi that the request to vacate the premises upon one-day notice was unreasonable.

19. On May 31, 2022, Defendant Shlomo Gigi and Mr. Allan agreed to a 30-day renewal of the lease, and Defendant Shlomo Gigi further assured Mr. Allan that the $1,400 security deposit would be returned after he vacated the Apartment. Mr. Allan paid $1,400 to Defendant Shlomo Gigi for June's rent.

20. On June 29, 2022, Defendant Shlomo Gigi informed Mr. Allan that he intended to physically take possession of the keys to the Apartment and conduct a walkthrough inspection the next day at 6:00 p.m.

21. On July 1, 2022, Defendant Daniel Gigi arrived at the Apartment around 8:00 a.m. The parties had a misunderstanding about the move-out time. Despite the misunderstanding,

Mr. Allan informed Defendant Daniel Gigi that he had scheduled movers to show up later that afternoon and that he intended to fully vacate the Apartment by 6:00 p.m.

22.     Defendant Daniel Gigi called Defendant Shlomo Gigi via the Facetime application on his iPhone, during which Defendant Shlomo Gigi: (a) repeatedly made threats to physically remove Mr. Allan from the Apartment by force; (b) threatened to keep the security deposit; (c) falsely accused Mr. Allan of "lying and playing games"; and (d) repeatedly yelled insulting and demeaning statements at Mr. Allan.

23.     After Defendant Daniel Gigi terminated the call, Defendant Daniel Gigi and Mr. Allan agreed to physically meet at the Apartment on July 5, 2022 to perform the final walkthrough inspection and discuss the return of the $1,400 security deposit.

24.     On July 5, 2022, Defendant Daniel Gigi met with Mr. Allan at the Apartment. Mr. Allan inquired about the return of his $1,400 security deposit, but Defendant Daniel Gigi refused to provide any information to Mr. Allan during the meeting. Mr. Allan requested to speak with Defendant Shlomo Gigi, but Defendant Daniel Gigi refused the request.

25.     Defendant Daniel Gigi threatened to physically hurt Mr. Allan if he did not immediately vacate the Apartment. In response, and because he felt unsafe, Mr. Allan called 9-1-1.

26.     Two ACPD officers responded to the scene, one of whom was Defendant R. Stanley. After speaking with the parties, one of the officers reassured Mr. Allan that he had a legal right to be in the Apartment. The officers then departed the scene.

### Defendant Daniel Gigi's Unlawful Conduct

27.     After the two police officers left the scene, Mr. Allan remained in the Apartment, while Defendant Daniel Gigi randomly entered and exited the Apartment on a sporadic basis

without Mr. Allan's consent. Defendant Daniel Gigi grew increasingly frustrated with Mr. Allan and, at one point, threw a carpet at him.

28.     After throwing the carpet, Defendant Daniel Gigi approached Mr. Allan in an aggressive manner while simultaneously making verbal threats to harm Mr. Allan. Despite receiving the information from the officer that Mr. Allan had a legal right to be in the Apartment, Defendant Daniel Gigi again demanded that Mr. Allan immediately vacate the premises.

29.     In response, Mr. Allan asked Defendant Daniel Gigi to keep his distance because he felt unsafe and threatened by his aggressive actions. Defendant Daniel Gigi refused to do so. Fearing for his safety, Mr. Allan displayed a small can of pepper spray in hopes of deterring any physical alteration from occurring. Mr. Allan also recorded the entire incident out of fear.

30.     Upon seeing the pepper spray, Defendant Daniel Gigi: (a) charged at Mr. Allan; (b) threw him onto the sofa; (c) knocked Mr. Allan's phone out of his hand; and (d) jumped over Mr. Allan. To protect himself, Mr. Allan pepper sprayed Defendant Daniel Gigi, at which point Defendant Daniel Gigi stepped back from Mr. Allan, called Defendant Shlomo Gigi, and took several pictures of Mr. Allan, who remained in a defensive position on the sofa.

### Racial Profiling by Defendants Carly Whisner and R. Stanley

31.     After being physically attacked by Defendant Daniel Gigi, Mr. Allan again called 9-1-1 to report the incident and to seek immediate aid. Defendants Carly Whisner and R. Stanley responded to the scene. Defendant R. Stanley was one of the two officers who previously reported to the scene to address Mr. Allan's first 9-1-1 call.

32.     Defendants Carly Whisner and R. Stanley spoke with Defendant Daniel Gigi about the incident for an extended period of time. Defendant R. Stanley briefly spoke with Mr. Allan about the incident. Defendant Carly Whisner never spoke with Mr. Allan about the

incident. Defendant R. Stanley acknowledged the scratches on Mr. Allan's arms and noted that Mr. Allan's fingers were bleeding. Defendant R. Stanley questioned Mr. Allan about the blood spatter that he observed on a Bar Exam preparation book, which Mr. Allan confirmed was a result of his injuries.

33.     Defendants Carly Whisner and R. Stanley then detained Mr. Allan by placing him in handcuffs, and positioned him outside of their patrol car in front of the River Place North complex building for nearly two hours. Defendant Carly Whisner informed Mr. Allan that he was being arrested and/or detained for assault and battery. Upon explaining that Defendant Daniel Gigi was the one who actually assaulted him, Defendant Carly Whisner stated that Mr. Allan "looked like the primary aggressor." Mr. Allan asked Defendant Carly Whisner to explain what she meant by the statement, but she ignored him.

34.     At some point while walking Mr. Allan to the front of his apartment complex building, Defendant Carly Whisner told Defendant R. Stanley to "make sure to throw" Mr. Allan "outside the building."

35.     Mr. Allan repeatedly told Defendants Carly Whisner and R. Stanley that he had a recording of the incident that confirmed Defendant Daniel Gigi was the primary aggressor. Defendants Carly Whisner and R. Stanley refused to view the recording and continued to ignore the claims made by Mr. Allan.

36.     During the two hours that Mr. Allan was detained at the rear of the patrol car, Defendant Carly Whisner escorted Defendant Daniel Gigi to the local courthouse and helped him file charges against Mr. Allan.

37.     At one point during his two-hour detention in front of the apartment complex building, Mr. Allan informed Defendant R. Stanley that his wrists were in extreme pain due to

tight handcuffing. Defendant R. Stanley ignored Mr. Allan. Mr. Allan sustained severe bruising around his wrists as a result of the tight handcuffs, and he experienced significant wrist pain for several days.

38.     Defendant Carly Whisner procured arrest warrants based on the statements provided by Defendant Daniel Gigi despite never speaking with or questioning Mr. Allan to learn his version of the situation. The arrest warrants charged Mr. Allan with violating Va. Code §§ 18.2-312 (Class 3 Felony) and 18.2-57 (Class 1 Misdemeanor). Attached hereto as Exhibits 2 and 3 are true and correct copies of the warrants.

39.     The arrest warrants were procured based on false statements made by Defendant Daniel Gigi. Defendant Daniel Gigi and Defendant Carly Whisner acted with malice in causing the warrants to be issued. No probable cause existed to support the issuance of the arrest warrants.

40.     Defendants Carly Whisner and R. Stanley treated the statements made by Defendant Daniel Gigi more favorably than those made by Mr. Allan because of Defendant Daniel Gigi's status as a White male.

41.     Defendant R. Stanley knew or should have known that Mr. Allan had a legal right to be in the Apartment, and he knew or should have known that Defendant Daniel Gigi did not have a legal right to be in the Apartment.

42.     Upon being served with the arrest warrants, Defendant R. Stanley and another officer transported Mr. Allan to the Arlington County Detention Center ("ACDC").

43.     Defendants Carly Whisner and R. Stanley did not arrest or detain Defendant Daniel Gigi. Both Defendants Carly Whisner and R. Stanley ignored: (a) Mr. Allan's pleas to review the 9-1-1 calls made earlier; (b) the recordings of the incident; and (c) the statement made

by the officer who initially appeared with Defendant R. Stanley in response to Mr. Allan's first 9-1-1 call.

44.     As a result of the arrest warrants, Mr. Allan was taken into custody at the ACDC, where he was photographed, fingerprinted, and forced into solitary confinement for two nights. Mr. Allan was later taken before a judge at the General District Court on at least four separate occasions.

45.     Mr. Allan was ordered to appear in court on August 18, 2022. The Assistant Commonwealth Attorney ("ACA") assigned to Mr. Allan's case moved to reschedule the appearance to November 1, 2022, citing lack of evidence to support probable cause. Both charges were ultimately dismissed and remain as the only criminal incidents on Mr. Allan's record.

46.     In accordance with the conditions associated with the pretrial release, Mr. Allan was: (a) required to undergo a psychiatric evaluation prior to his release; and (b) barred from returning to the River Place North apartment complex.

47.     The terms of Mr. Allan's pretrial release impermissibly invaded his personal privacy and damaged his reputation by placing his mental health in question.

48.     During the four months that the charges were pending against Mr. Allan, Defendant Daniel Gigi refused to cooperate with the ACA. The ACA tried to reach Defendant Daniel Gigi on several different occasions to no avail.

### *ACPD's History with Unreasonable Seizures and Racial Profiling*

49.     From 2015 through 2019, the ACPD saw a 25% increase in the submission of racially-biased policing complaints from civilians.

50.     In a letter dated June 16, 2020, the Arlington Branch of the National Associated for the Advancement of Colored People ("NAACP") flagged the need for Defendant Arlington County to increase transparency in policing by making each officer's misconduct and disciplinary history publicly available to promote procedural justice and legitimacy. The NAACP's letter was accompanied by 1,765 signatures on a petition initiated by an Arlington high school student and 7,919 signatures on a petition by the NAACP. Attached as Exhibit 4 is a true and correct copy of the NAACP's letter.

51.     According to the 2020 census performed by the United States Census Bureau, Defendant Arlington County is comprised of 60% Whites (excluding Latinx), 10% Blacks, and 16% Latinx. Yet, 51% of arrestees are Black and 45% are White. The ACPD statistics count members of both the Latinx and Arab communities as "White," effectively misrepresenting and overrepresenting the data for White arrestees.

52.     Between 2016 and 2021, Defendant Arlington County received 152 civilian complaints of police misconduct, but only 9% were adjudicated in favor of civilians. During the same time period, Defendant Arlington County received 14% of police racial discrimination. Yet, none were adjudicated in favor of civilians.

## COUNT I
### Defendants Carly Whisner's and R. Stanley's Violation of the
### Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983)

53.     Mr. Allan incorporates herein by reference the allegations set forth in paragraphs 1 through 52.

54.     The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

55.     An officer is liable under 42 U.S.C. § 1983 if he or she deprives an individual of their constitutionally protected rights under color of state law.

72.     At all relevant times, Defendants Carly Whisner and R. Stanley engaged in a course of conduct that unlawfully discriminated against Mr. Allan based on his race, and that which lacked any rational basis. Specifically, Defendants Carly Whisner and R. Stanley deprived Mr. Allan of equal protection under the law by, among other things:

   a.  Seizing, detaining, and/or arresting Mr. Allan without probable cause, and with knowledge that Mr. Allan resided in the Apartment and had a legal right to be physically present there (¶¶ 33 and 43);

   b.  Refusing to listen to Mr. Allan's statements or audio recordings, while at the same time treating the statements made by Defendant Daniel Gigi as conclusive proof of Mr. Allan's culpability (¶¶ 32 and 40);

   c.  Facilitating the filing of charges by Defendant Daniel Gigi while refusing to afford the same opportunity to Mr. Allan (¶ 38);

   d.  Prematurely and arbitrarily identifying Mr. Allan as "the primary aggressor" based solely on his race (¶ 33); and

   e.  Forcibly removing Mr. Allan from his residence while allowing Defendant Daniel Gigi—a trespasser—to remain in the Apartment (¶ 34).

73.     Defendants Carly Whisner and R. Stanley racially profiled Mr. Allan while acting under color of state law, and they engaged in racially discriminatory conduct towards Mr. Allan.

74.     Through their unlawful conduct, Defendants Carly Whisner and R. Stanley ratified and perpetuated invidious, archaic, and overbroad stereotypes about Arab-Americans.

75.     The actions taken by Defendants Carly Whisner and R. Stanley were motivated by an intent to discriminate against Mr. Allan because of his race or ethnicity.

76.     Defendants Carly Whisner and R. Stanley's actions were willful and malicious.

77.     Mr. Allan suffered substantial harm due to the actions taken by Defendants Carly Whisner and R. Stanley.

## <u>COUNT II</u>
**Defendant Arlington County's Failure to Adequately Train or Supervise**

78.     Mr. Allan incorporates herein by reference the allegations set forth in paragraphs 1 through 52.

79.     A municipality is liable under 42 U.S.C. § 1983 if it deprives an individual of civil rights through an official policy or custom.

80.     Defendant Arlington County's training policy or procedure is wholly inadequate with respect to: (a) determining whether probable cause exists to seize, detain, or arrest a civilian in accordance with the Fourth Amendment; and (b) how officers should handle matters involving civil disputes between White residents and non-White residents within the County, including the incident involving Mr. Allan and Defendant Daniel Gigi.

81.     Defendants Carly Whisner and R. Stanley deprived Mr. Allan of equal protection under the law by, among other things: (a) seizing, detaining, and/or arresting him on the scene for more than two hours while allowing Defendant Daniel Gigi to roam free; (b) ignoring and/or discrediting his statements while treating the statements made by Defendant Daniel Gigi as conclusive proof of Mr. Allan's culpability; and (c) providing preferential treatment to Defendant Daniel Gigi because of his status as a White male.

82.     Defendants Carly Whisner and R. Stanley failed to provide Mr. Allan with any Miranda rights or warnings during the period they seized, detained, and arrested him, or during the period they transported Mr. Allan to the ACDC.

83.     The actions taken by Defendants Carly Whisner and R. Stanley were performed under color of state law.

84.     The actions taken by Defendants Carly Whisner and R. Stanley were motivated by an intent to discriminate against Mr. Allan because of his race or ethnicity.

85.     The actions taken by Defendants Carly Whisner and R. Stanley were welcomed, if not incentivized, by the official policies, customs, and/or practices of the Arlington County Police Department.

86.     Upon information and belief, Arlington County Police Department has maintained a series of customs, polices, or practices that proximately caused and were likely to lead to the violation of Mr. Allan's constitutional and civil rights. These customs, policies, or practices, included, among other things, the following:

    a.  Failing to institute adequate training policies or procedures for addressing and handling complaints that involve allegations of racial discrimination filed by civilians of color in the County against police officers;

    b.  Failing to institute adequate remedial measures or training to stop, correct, or discipline White officers who engage in acts of racism, including excessive force and police brutality against Arlington County residents of color;

    c.  Failing to institute adequate training policies or procedures to address the stark disparity in civilians of color who are seized, detained, and/or arrested by police officers in a significantly disproportionate percentage to the demographics in the County;

    d.  Failing to take appropriate disciplinary action and corrective measures against ACPD officers who have engaged in unreasonable seizures, in violation of the Fourth and Fourteenth Amendments; and

    e.  Failing to properly and adequately monitor, discipline, and take necessary corrective action against ACPD officers who engage in or encourage unconstitutional practices against civilians of color residing within the County.

87.     Through its official policies or customs, and the actions taken by Defendants Carly Whisner and R. Stanley in conformity therewith, Defendant Arlington County has deprived Mr. Allan of equal protection under the law, in violation of the Fourteenth Amendment. Defendant Arlington County's official policies or customs reflect a deliberate indifference to the risk of future constitutional violations against civilians of color in Arlington County.

88.     Had Defendant Arlington County ensure that Defendants Carly Whisner and R. Stanley received proper training, they would have treated Mr. Allan and Defendant Daniel Gigi equally under the law, and afforded both an equal opportunity to present statements to the court before any arrest warrants were issued.

89.     Had Defendants Carly Whisner and R. Stanley received proper training from Defendant Arlington County, Mr. Allan would not have been detained for two hours in handcuffs and the arrest warrants against him would not have been issued.

90.     Defendant Arlington County's inadequate training policy or procedure was a main factor that led to the violation of Mr. Allan's constitutional rights.

91.     Defendant Arlington County's failure to provide adequate training to Defendants Carly Whisner and R. Stanley reflects a deliberate indifference to the risk that constitutional violations would occur when addressing disputes between civilians of color and White civilians within the County.

73.     As a direct and proximate result of Defendant Arlington County's actions, Mr. Allan has been deprived of his civil rights, suffered loss of employment, loss of income, and continues to suffer emotional distress, humiliation, and damage to his reputation.

**COUNT III**
**Defendants Carly Whisner's and R. Stanley's Violation of the**
**Fourth Amendment (42 U.S.C. § 1983)**

74.     Mr. Allan incorporates herein by reference the allegations set forth in paragraphs 1 through 52.

75.     The Fourth Amendment guarantees "[t]he right of the people . . . against unreasonable . . . seizures," and that "no Warrants shall issue, but without probable cause[.]"

76.     Defendants Carly Whisner and R. Stanley seized, detained, and/or arrested Mr. Allan without probable cause prior to the issuance of the arrest warrants.

77.     The actions taken by Defendants Carly Whisner and R. Stanley were performed under color of state law.

78.     Defendants Carly Whisner and R. Stanley knew or should have known that they lacked a legal justification to seize, detain, and/or arrest Mr. Allan for more than two hours, using handcuffs, prior to obtaining the arrest warrants.

79.     Defendants Carly Whisner and R. Stanley engaged in inappropriate racial profiling upon reporting to the scene and labeling Mr. Allan as the "primary aggressor" based solely on his appearance. Mr. Allan was not the primary aggressor, he had a legal right to be in the Apartment—where he resided—and made two calls to 9-1-1 to report the threatening acts and assault committed against him by Defendant Daniel Gigi. Defendant R. Stanley responded to the initial 9-1-1 call and confirmed that Mr. Allan had a legal right to be in the Apartment.

80.     Under the same or similar circumstances, a reasonable officer in Defendants' position would have determined that no probable existed to seize, detain, or arrest Mr. Allan prior to the issuance of the arrest warrants.

81.     Defendants Carly Whisner and R. Stanley used an unreasonable amount of force on Mr. Allan in effecting the seizure, detention, and arrest. Defendants' use of force violated Mr. Allan's Fourth Amendment rights because the force was excessive and objectively unreasonable under the circumstances. Mr. Allan was not a threat to the officers, Defendant Daniel Gigi, or the public, and Mr. Allan fully cooperated with the instructions given by Defendants Carly Whisner and R. Stanley.

82.     A reasonable officer in Defendants Carly Whisner's position would have afforded Mr. Allan an equal opportunity to present statements to the court so that an informed decision could be made about whether to issue an arrest warrant against either party.

83.     Defendants Carly Whisner and R. Stanley acted intentionally and with malice by: (a) arresting or detaining Mr. Allan without probable cause; (b) ignoring Mr. Allan's testimony and documentary evidence; (c) ignoring the two prior 9-1-1 calls made by Mr. Allan; and (d) ignoring the testimony of the officer who informed Mr. Allan of his right to remain in the Apartment.

84.     The actions taken by Defendants Carly Whisner and R. Stanley were motivated by an intent to discriminate against Mr. Allan because of his race or ethnicity.

85.     The criminal charges filed against Mr. Allan were resolved in Mr. Allan's favor.

86.     Mr. Allan suffered substantial harm due to the actions taken by Defendants Carly Whisner and R. Stanley.

## COUNT IV
### False Arrest under Virginia Law by
### Defendants Carly Whisner, R. Stanley, and Daniel Gigi

87.     Mr. Allan incorporates by reference the allegations set forth in paragraphs 1 through 52.

88.     Defendants Carly Whisner and R. Stanley intentionally restricted Mr. Allan's freedom of movement by seizing, detaining, and arresting him without adequate legal justification prior to the issuance of the arrest warrants.

89.     In seizing, arresting, and detaining Mr. Allan without adequate legal justification, Defendants Carly Whisner and R. Stanley violated Mr. Allan's rights under Virginia law.

90.     Defendant Carly Whisner and R. Stanley acted intentionally and with malice or a reckless indifference towards Mr. Allan's federally protected rights in knowingly seizing, detaining, and arresting him without adequate legal justification prior to the issuance of the arrest warrants.

91.     Mr. Allan suffered substantial harm due to the actions taken by Defendants Carly Whisner and R. Stanley.

92.     Through the submission of false and/or intentionally misleading statements, Defendant Daniel Gigi caused the unlawful restraint of Mr. Allan's physical liberty. Defendant Daniel Gigi knowingly made the false and/or intentionally misleading statements to the court for the purpose of effecting Mr. Allan's arrest and removal from the Apartment.

93.     Mr. Allan was arrested, removed, and permanently banned from the Apartment due to the actions taken by Defendant Daniel Gigi.

94.     Defendant Daniel Gigi acted intentionally and with malice in making the false and/or intentionally misleading statements to the police and the court.

95.     The collective actions taken by Defendants Carly Whisner, R. Stanley, and Daniel Gigi caused the court to issue the warrants for Mr. Allan's arrest and resulted in Mr. Allan being for two nights at the Arlington County Detention Center.

96.     Mr. Allan suffered harm due to the actions taken by Defendants Carly Whisner, R. Stanley, and Daniel Gigi.

### COUNT V
### Malicious Prosecution by Defendant Daniel Gigi

97.     Mr. Allan incorporates herein the allegations set forth in paragraphs 1 through 52.

98.     The prosecution connected with the charges filed against Mr. Allan was instituted by statements provided by Defendant Daniel Gigi.

99.     Defendant Daniel Gigi knowingly made false or intentionally misleading statements to law enforcement and the court to procure warrants for Mr. Allan's arrest and to institute the prosecution of the resulting charges.

100.    The false or intentionally misleading statements provided by Defendant Daniel Gigi led to Mr. Allan's arrest and subsequent prosecution.

101.    Defendant Daniel Gigi acted intentionally and with malice in making the false or intentionally misleading statements that led to Mr. Allan's arrest and subsequent prosecution.

102.    Defendant Daniel Gigi willfully refused to participate in the prosecution proceedings because he knew or should have known that his statements were false or intentionally misleading.

103.    The prosecution against Mr. Allan was dismissed for lack of probable cause.

104.    The criminal charges filed against Mr. Allan were dismissed and the proceedings terminated in a manner not unfavorable to Mr. Allan.

105.    Mr. Allan suffered substantial harm due to the actions taken by Defendant Daniel Gigi.

## **COUNT VI**
### **Unlawful Eviction by Defendants Daniel Gigi and Shlomo Gigi**

106.    Mr. Allan incorporates herein by reference the allegations set forth in paragraphs 1 through 52.

107.    Defendant Daniel Gigi physically or constructively evicted Mr. Allan from the Apartment on July 5, 2022. The eviction was unlawful. Defendant Daniel Gigi did not have legal authority to evict Mr. Allan from the Apartment on July 5, 2022.

108.     Defendant Shlomo Gigi instructed Defendant Daniel Gigi to physically evict Mr. Allan from the Apartment on July 5, 2022. Defendant Shlomo Gigi's instruction was unlawful. Defendant Shlomo Gigi did not have the legal authority to order the eviction of Mr. Allan.

109.     Defendants Daniel Gigi and Shlomo Gigi acted intentionally and with malice in evicting Mr. Allan from the Apartment.

110.     Mr. Allan suffered substantial harm due to the actions taken by Defendants Daniel Gigi and Shlomo Gigi.

### COUNT VII
**Conversion of Funds by Defendant Shlomo Gigi**

111.     Mr. Allan incorporates herein by reference the allegations set forth in paragraphs 1 through 52.

112.     Under Virginia law, Defendant Shlomo Gigi was required to hold Mr. Allan's security deposit of $1,400 in an escrow account maintained by a federally insured depository authorized to do business in Virginia.

113.     Under Virginia law, Defendant Shlomo Gigi was required to return Mr. Allan's security deposit within 45 days after July 5, 2022.

114.     Defendant Shlomo did not return Mr. Allan's security deposit within the time proscribed under Virginia law. To date, Defendant Shlomo has not returned Mr. Allan's security deposit.

115.     Upon information and belief, Defendant Shlomo Gigi did not maintain Mr. Allan's security deposit in an escrow account maintained by a federally insured depository authorized to do business in Virginia.

116.     Mr. Allan made several requests to Defendant Shlomo Gigi for the return of the $1,400 security deposit.

117.    Defendant Shlomo Gigi acted intentionally and with malice in failing to return Mr. Allan's security deposit despite Mr. Allan's repeated requests to do so.

118.    Mr. Allan suffered damages in the amount of $1,400, plus interest, due to Defendant Shlomo Gigi's actions.

<u>**COUNT VIII**</u>
**Constructive Fraud by Defendant Shlomo Gigi**

119.    Mr. Allan incorporates herein by reference the allegations set forth in paragraphs 1 through 52.

120.    Defendant Shlomo Gigi's repeatedly assured Mr. Allan that he would return Mr. Allan's security deposit upon the expiration of Mr. Allan's tenancy or within a reasonable time thereafter. Defendant Shlomo Gigi's assurances were false or made with a reckless disregard for the truth.

121.    The representations made by Defendant Shlomo Gigi concerned a material fact.

122.    Defendant Shlomo Gigi failed to return Mr. Allan's security deposit upon the expiration of Mr. Allan's tenancy or within a reasonable time thereafter. To date, Defendant Shlomo has not returned Mr. Allan's security deposit.

123.    Mr. Allan reasonably and detrimentally relied on the representations made by Shlomo Gigi.

124.    Defendant Shlomo Gigi acted intentionally and with malice in making the representation to Mr. Allan about the return of the security deposit and in failing to refund the security deposit upon the expiration of Mr. Allan's tenancy or within a reasonable time thereafter.

125.    Mr. Allan suffered actual damages due to the misrepresentations made by Defendant Shlomo Gigi.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Allan respectfully requests that the Court enter judgment on the Complaint, in favor of Mr. Allan and against Defendants Daniel Nathan Gigi, Shlomo Gigi Carly Whisner, R. Stanley, Arlington County, as follows:

A.      Award Mr. Allan compensatory damages against all Defendants for the harm suffered as a result of their conduct, in a fair and reasonable amount to be determined at trial;

B.      Award Mr. Allan punitive damages against Defendants Carly Whisner, R. Stanley, Daniel Nathan Gigi, and Shlomo Gigi, in an amount that sufficiently punishes, penalizes, and/or deters their unlawful conduct;

C.      Award Mr. Allan pre-judgment and post-judgment interest;

D.      Award Mr. Allan the costs and fees he incurred in connection with this action, including his reasonable attorney's fees;

E.      Declare that the actions taken by Defendants Carly Whisner and R. Stanley, under color of state law, violated Mr. Allan's federally-protected rights;

F.      Declare that Defendant Arlington County's official polices, customs, or practices in failing to adequately train or supervise its police officers on the negative implications of racial profiling on civilians of color reflect a deliberate indifference to the risk on a constitutional violation occurring;

G.      Enter an injunction requiring Defendant Arlington County to institute one or more training policies and/or procedures that aim to reduce the occurrences of racial profiling used in policing against civilians of color within the County; and

H.      Grant Mr. Allan such other relief as the Court deems just and proper, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: July 5, 2023

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
VA Bar No: 97839
JD Howlette Law
1140 3rd St. NE
Washington, D.C. 20002
Tel: (202) 961-6005
Fax: (202) 921-7102
jordan@jdhowlettelaw.com
*Counsel for Plaintiff*